Okay, our third argument today is case number 20-2470, Westminster American Insurance v. Spruce1530LLC. Mr. Channon? Good afternoon, your honors. Good afternoon. Would you like to reserve time for rebuttal? Yes, I would like to reserve two minutes, please. That's fine. You may proceed. Good afternoon, your honors. Judge Roth, Judge Frater, and Judge Hardiman. May it please the court, my name is David Channon. I represent the felons Spruce1530LLP and Al Shapiro, the nonagenarian principal of Spruce1530. This is an insurance coverage case involving a determination of what is the insurer's duty to defend. The question is, should the insurer, really the issue is, should the insurer, Westminster, be able to avoid the broad duty to defend, it's insured, based on a technical definition of policy terms. Here, malicious prosecution is a term used by Westminster, but not defined in their policy. Or as a matter of law, is the insurer obligated to provide a defense because, one, the policy term malicious prosecution is ambiguous, keeping what seems to be the theme of the day. And secondly, because the facts played in the underlying complaint continue to state a potentially covered claim, under any definition of malicious prosecution. The answer seems clear. Mr. Channon, were you the lawyer in the state litigation in this case? No. Okay. Are you familiar with that? That was Claire Harrison for the terrain, and Zach Silverstein of Zarwin Baum for the defense. Are you familiar with the state litigation? Some. What argument was made by your clients at the preliminary objection phase, you know? I don't know the details. I should, but I don't. And I believe the argument was, generally, they moved to this, they moved, they filed preliminary objections as to both counts of the complaint. And the preliminary objection to the first count, the wrongful use of civil proceedings under the Dragonetti Act, was granted, sustained. And the second count was denied, the preliminary objection was denied. And the case went forward on the second count. It's pending. Yeah, I guess what I'm getting at is, I would assume the argument was made that recovery was not possible on the malicious prosecution claim. That would be the purpose of the preliminary objection. You would think. In the nature of a demur in state court, yeah. So then why would there be? Should the issue of, should the issue after the dismissal of the first complaint covering malicious prosecution, clearly covered under the Dragonetti Act, whether the insurance company for the abuse of process count still had to provide coverage under Pennsylvania law? Should we refer, certify that to the Pennsylvania Supreme Court? Well, that's a great question. The second issue, you mean, the continuing duty to defend. The continuing duty to defend after the dismissal of count one. Count one being the wrongful use of civil proceedings under the Dragonetti Act. Which is clearly covered by the insurance policy. Yes, that's acknowledged by everyone. Mr. Shannon, do you know if counsel for your client who was involved in the underlying case was retained by the insurer in the first instance? The first instance of the underlying case? Yes. No, they were not. Okay. So that the insurer was not implicated by the actions of counsel in handling the preliminary objections. I believe that is correct. So, yes, that's not, wasn't the insurance. Well, I'm not looking for a conflict of Yes. No, I believe I'm pretty sure. No, the answer is no, they were not retained by the insurance company to defend. And do you know if there was anything in the record about discussion of the insurer proceeding pursuant to a reservation of rights? No. And, you know, that's an interesting question. I do want to get back to Judge Roth's question, but it's an interesting question, because I'll be talking about the Toll Brothers case. It's given a lot of emphasis in our brief. I think it was interesting that in that case, where there was an abusive process claim, and the policy term was malicious prosecution, the insurance company did exactly that. They defended under a reservation of rights. And when the judgment came in that issue in that case, they had defended the issue in that case was a duty to indemnify. I apologize for interrupting you responding to Judge Roth. So on the issue of a continuing duty to defend. Yeah. The District Court heard on that issue, there is a continuing duty to defend. There are no Pennsylvania cases that have decided that issue. But I believe you can extrapolate from the basic Pennsylvania law, the standard for a continuing duty to defend. In any event, the determination of a duty to defend applying Pennsylvania law principles requires an independent analysis by the District Court to determine if there is any possibility of coverage. The District Court did not make an independent analysis. The District Court relied entirely on the decision on preliminary objections, which was issued without opinion. The decision had no opinion, it didn't state a word about its scope or its rationale. And it also did not strike. Why does that matter? Because we do know that malicious prosecution was taken out of the case. Your client's not... Well, the other thing it didn't do was strike any of factual allegations of the complaint. Well, that does... Okay, you could allege all the facts you want, but based on what the State Court did, what we do know is that your client is not liable for malicious prosecution. No, we don't know that. Your client may be liable for abuse of process, but malicious prosecution was taken out of the case, right? Well, wrongful use of civil proceedings under the Dragonetti Act was dismissed. That's not the term used by Westminster after all the years of courts saying that term is ambiguous. Westminster continued to use the term malicious prosecution. I understand the courts use those interchangeably sometimes, but the point is the facts pled, none of the facts were stricken. The test in Pennsylvania for determining coverage is you compare the policy term to the facts pled, not the labels put on the case by the defendant. We don't know exactly what the trial court, the common pleas court held, but we do know that the court did not strike any factual allegations. I can't imagine that that could be the law. Let me give you a hypothetical to illustrate my point. Let's assume a two count complaint, one sounding in contract and one sounding in tort. So the complaint is full of factual allegations. There are 50 factual allegations before count one. Count one then says in paragraph 51, as we often see in Pennsylvania pleading, plaintiff hereby incorporates paragraphs one through 50 herein, right? So then paragraph 51, 52, and 53 articulated breach of contract claim. Then paragraph 54 articulates a tort claim. Okay. And let's say that the defendant has coverage for tort, for torts, but not contract. Is it your position that if on preliminary objections, the court throws out the tort count and says under the What I hear you saying about the allegations is that because in my hypothetical, the court does not strike the factual allegations that an insurance carrier would still have to defend the tort claim, even though the tort claim has been thrown out of the case. Is that your position? Close. My position is the court has to make an, the court just cannot rely, the district court can't rely on the sustaining of preliminary objections on the negligence claim. The court must make its own independent analysis. Is there any possibility of coverage? If what you're describing is a simple breach of contract with someone didn't pay for goods sold and an account and allegations were thrown in of negligence, as often happens, and the court strikes the negligence on just to the action, the court can make an, the district court can make an analysis of that and say, what's this case about? What's the, what are the facts pled exactly? How close, how closely intertwined is the negligence claim with the contract claim? If it were a simple goods sold and delivered and not paid for, then I think the negligence claim is gone. In other words, the court makes a determination. There's no likelihood of, there's no possibility of a future claim coming back. Is what you're arguing that the absence of a, in this instance, because the case came from where preliminary objections had been granted and then the district court got involved, that in the absence of an explanation of the granting of the preliminary objections, the court could not really assess whether on, if there were to be an appeal of the dismissal of the one cause of action, whether it was likely to be held on appeal or whether it was a harebrained decision and the case, the claim would be back in the case at some point. It's a pretty good way to put it. It's partly that, it's partly that yes, I think that's right. Well, another, I mean, obviously what we're talking about in this case, not obviously, but what we're talking about in this case is when is a claim over? When do we look at the four corners or the eight corners or however many corners we're going to go around here to decide when the duty to defend has been extinguished? Well, in Hawaii, if I could just piggyback on what Judge Prater said, under Hawaii law, you're a winner because under Hawaii law, it doesn't matter that the court threw out on POs, unless and until that reaches a final conclusion through the appellate process, it's still live under Hawaii law, right? Well, I think under more than just Hawaii, yes, probably. Yeah, quite a few. I mean, there's some, you know, a little closer to home, I think. Well, what's the P? I'm not familiar with any P cases. And the restatement of insurance, of liability insurance. Well, that's new though. That has not been... That's new. Yeah, that's like 2019. It'll be many years before we get decisions on that, I'm afraid. And we have no decisions in Pennsylvania, like the Hawaii case or against the Hawaii case. There's no decisions. At least our research didn't disclose any. Right, but you're asking us to follow what Hawaii's done, basically. Uh, close. I'm asking you to not adopt a bright line test. And the restatement, and arguably Hawaii and the cases that have followed it take a bright line test the other way. Yes, in my favor, but I don't think we have to go that far in this case. Well, you've got Minnesota, I think. Minnesota, yes. And Ohio and Iowa. And the Ninth Circuit. Okay, well, maybe. I believe. Wait, I may be confusing. But here, there's quite a number of district court cases here that are against your argument. None in Pennsylvania that I could find. I know of no case in Pennsylvania holding that anything about the insurance company's continuing duty to defend when the covered claim is out. Now, the cases that hold the duty to defend no matter what, even in Judge Hardiman's example of the negligence claim being tossed out when it's clearly a contract claim. The, I would think the Hawaii court would say, yes, you have a continuing duty to defend right to final judgment, dismissal of the case, settlement, or the appeal. I'm not asking for that. I'm asking for, on the facts of this case, I'm asking for a rule, a standard that in every case, the judge can't abdicate the duty to make an independent analysis. And I think this is what the cases actually do, the cases around the Analyzing what? Analyzing the facts that are still in the case. How intertwined are the two claims? How clear is the law? How likely, given that these abusive process and malicious prosecution are so closely related, and the facts, exact same facts, the count two of the complaint pleads a Dragon Etiac claim or a covered claim. If you just, if you follow Pennsylvania insurance law, which says the duty to defend is broader than the duty to indemnify. And you have to look at the facts against the complaint and determine if the facts plead create a possibility of coverage. And you extend that into the post dismissal period. That's the analysis you have to make, which is the case of the facts inextricably intertwined. Is the law clear on this issue? On the cases that have dismissed that in the district court, the cases have been in this, in this district, district court cases, but no pencil. What I was saying was no Pennsylvania case. That's what I was referring to is that there's quite a litany of Eastern District and Western District of Pennsylvania cases. And what I say is each of those cases makes its own analysis. They don't stop with the dismissal. I don't, maybe Mr. Salsa will correct me, but I don't know of any case that just says dismissal of a covered count is the end of the inquiry. They talk about, well, in this case, the party was dismissed from the case. In this case, they analyze the law. In this case, there would be a criminal action is described. There'd be no possibility of coverage because of the criminal exclusion. In another case, it was a board member and the company who had DNO coverage and the company was dismissed. So the board member was no longer in the case, but none of the cases stopped with, well, it was a dismissal bright line test. I don't have to make any further inquiry. I'm done out of the case. It's so close in this case, there's so many reasons. I mean, the ambiguity, I would say there's a strong likelihood, there's a likelihood, or put another way, the court can't clearly rule out the possibility that the Dragon Etiac claim will come back. Or maybe more important that the facts played in count two, the abuse of process count, if proven at trial, may permit, depending on the judge's charge, which we don't know what it'll be, it'll be a different judge. Depending on the jury's verdict, the jury could come back with a verdict, which clearly, which makes findings on those facts, which are in the case. And if they do, those facts make out a malicious prosecution claim, however, it's defined. Westminster has a Pennsylvania endorsement that might say, we don't cover, we cover malicious prosecution as set forth in the Dragon Etiac, but they don't, and they don't exclude or make any mention of abusive process not being covered. So given the ambiguity, given the facts played, it's in the case. I'm sort of surprised by this approach, because I understood that what you were going to be pushing is the notion that Pennsylvania ought to get on board with the notion that until the appellate process has been vetted, the duty to defend persists. I'd love that if they held it, but, and that's one of the reasons I suggested that it go, be certified to the court, since there are no Pennsylvania high court or low court decisions. However, for this, this court, I don't want to be presumptuous, but what I'm arguing is this court need not go so far. And I'm limiting my argument to the facts of this case and not an overarching bright line principle. And I think the district judge made a mistake in having a simple or simplistic bright line principle that said, like a migratory fowl, flying with no borders and no limits and no boundaries. It's a, as I say, what I see in the cases that I've read from around the country and in the district court is an analysis made by the district court. Coming back to Judge Hardiman's example, suppose that contract claim, there are cases in Pennsylvania. I'm trying to remember from way back. SHV Cole rings a bell. SHV Cole was a contract case, but the behavior was so outrageous that the court allowed a punitive damage claim. Now in that, on those circumstances, if those, if they, if a court had thrown out a negligence claim, that was a colorable claim, just because it was labeled negligence, you know, Pennsylvania law is clear. You don't look at, as this court has repeatedly held, you don't look at labels. You look at the facts pled. In those circumstances, if the common police court had dismissed the negligence claim in a contract suit on preliminary objections, I would argue that the court should make an, the district court on a coverage dispute should make an independent analysis and say, is that negligence claim still pled? Is it still real in this case? And if not, is there a reasonable chance that it'll come back either at trial, post-trial motions, or maybe on appeal? I'm not saying that in every case you have to wait for the appeal to be something more to make it clear that there's no possibility of coverage. And that's a long answer to judge Roth and judge Hardiman's and judge Prater's questions. All right, Mr. Chan, we'll hear you on rebuttal, Mr. Salzer. Good afternoon, your honors. William Salzer for the appellee at Westminster American. The lower court correctly held that a policy that ensures against liability for malicious prosecution does not cover abusive process. It's a separate and distinct tort under Pennsylvania law. Much of the briefing in the case concerned the impact of this court's 2002 Higgins decision, which we have not really discussed during this oral argument. But appellant asserted that the lower court erred by not following the Higgins decision and instead following the unpublished panel case in Langman. Well, there are two reasons why that's not correct. First, when a federal court makes an eerie prediction of state law, it's predicated on the sources of state law that are available to it at the time of the decision. And the vitality of that decision in the future depends on how state law has evolved on the question. So 10 years after Higgins, the panel in Langman concluded that it was clear now that abusive process is not subsumed under the Draganetti Act. It is a separate and distinct tort from malicious prosecution under Pennsylvania law. And that was a correct statement. And the Langman panel was correct as well. I want to bring to the panel's attention, however, a recent decision from last month from the Pennsylvania Supreme Court, which makes it even clearer that abusive process and the Draganetti Act are two different animals. And that case is the Rainer case. It's Rainer versus D'Annunzio. It's found at 2020 Westlaw 7560876. And the Supreme Court held that the Draganetti Act is a codification of the common cause of action for wrongful use of civil proceedings. And it deals with the initiation of legal proceedings that are without a basis in fact or in law as distinct from abusive process. And the holding in that case was that it was limited to proceedings, not intracase filings, such as motions, preliminary objections, subpoenas, discovery. Those are not proceedings. Abusive process, by contrast, involves any type of legal process that is perverted, that is not used for the purpose that it is intended. And it is not one in the same with proceedings. And abusive process can involve abuse of discovery, abuse of sanctions motions, post-trial motions. So clearly, when we see the Rainer case, we can understand that abusive process and malicious prosecution are entirely different. The heart of the controversy first is whether malicious prosecution can encompass the term abusive process. And it does not. Why? Well, first of all, the liability elements of the two torts are entirely distinct. Personal injury coverage extends to enumerated offenses specific towards libel, slander, false imprisonment, breach of trade dress, copyright infringement, malicious prosecution. It does not include abusive process. And by shoehorning abusive process into that list, we'd ignore that it's not identified. And it's not akin to malicious prosecution. And because the courts have held that these are distinct torts, the lower court was correct in treating it as such. But OK, but let me ask you, then, the fact that count one was dismissed without an opinion, that we don't know whether it may come back into the case again, should we certify to the Westminster have a continuing duty to defend after the dismissal of count one? First, that is controlled by the Oberdorf decision of this court. And the elements of that are one, this court would have to conclude that it is unable to predict Pennsylvania law on the issue. And of course, this court frequently does predict Pennsylvania law when there has not been. And we know what we can't do. So, you know, let's let's get some of these preliminaries and get to the heart of the matter. And it has to be an issue of first impression and it has to be one of substantial public importance. Well, you know, the issue is important to the insurance industry, no doubt. I don't know that it rises to the level. Not to mention insureds. And insureds, it's true. I don't know that that still rises to the level of substantial public importance to to suggest that it be certified to the Supreme Court. It also then involves delay. And that's another one of the factors, I think, that goes into this analysis, because then we're we're essentially addressing that issue before the Supreme Court. This case, the underlying case is going to go to trial in March, I believe, or April. So that's a factor as well. But I would also suggest that this court can discern from Pennsylvania law and this court's decisions decision, principally Commercial Union, the answer to the question without certifying the matter to the Pennsylvania Supreme Court, because we know that in commercial union insurance that the duty to defend does not remain in stasis once triggered by a complaint. I wanted to ask you about that precise point, Mr. Salzer. There was not a timely tender here to the carrier. But if the day after suit had been filed against Mr. Channon's clients, do you concede that if they had tendered at that time, there would have been a duty to defend because there was a live claim for malicious prosecution? Yes. All right. So so you would have then defended the case. And then presumably, you would have made the same arguments that were made on POs. And and when you prevailed on your PO and malicious prosecution, then what happens? Well, I mean, the same issue would be presented once the malicious prosecution fell out on a that the duty to defend terminated. The only difference in this case is that it never actually was triggered because at the time of the tender, it was no longer in the case. Right. But my but my point is that I guess you answered the question that that when you win on POs and malicious prosecutions thrown out of the case, you call the insured and you say, hey, you know, congratulations. The good news is we won. The bad news is we only won half the case. And unfortunately for you, the half of the case you won on is the half that was covered and the half that you lost on is not covered. Good luck. Is that your position? Well, I mean, if first of all, that's not what happened here because the insured controlled the defense. That's why it's a hypothetical. It is a hypothetical. But yes, it is true that that if the covered count did not withstand scrutiny, there is no obligation on the insurer to simply put blinders on to that fact. And if it was controlling the defense, not seek the dismissal of the covered count, you know, Pennsylvania. Converse is true, too, if if they if they prevailed at POs on abusive process and failed on malicious prosecution, then coverage continues. Right. No question about it. That's right. The covered count remained because the concept is that if there is a potential that the case would result in a verdict and judgment within the policy coverage for indemnity, that the duty to defend remains. And the language of Kudwadler, which is essentially the language that finds its way in all decisions, is that the insurer must defend the claim if it was potentially covered until such time that he can find the claim to one not covered by the policy. So the question is. So so really, this this case keeps it sort of keeps coming back to the question of whether these are two separate causes of action under Pennsylvania law or whether they're I think Mr. Channon used the phrase inextricably intertwined. If if they're separate cause of action, you win. If they're inextricably intertwined, then then you lose. Right. Well, you know, I'm not certain what I what he means by inextricably intertwined. I mean, the reality is, is that the abuse of process count. And if there was a verdict at trial in favor of the plaintiff, it's still based on abuse of process. The facts we can talk about the facts for abuse of process. It's the perversion of legal process. It doesn't matter whether the suit had factual or legal basis. It's it's using it essentially to extort or it's misusing the legal process. And those facts on which liability could be based at trial aren't covered because they're they're just abuse of process. So, you know, it's only if the if if the case is posited so that liability can be based on malicious prosecution, which, as a matter of fact, it cannot be because it's not part of the case. You know, the duty to defend remains, but we there was a demur. I mean, the court ruled as a matter of law that the facts played could not possibly give rise to this recovery. And that's a high standard. And if you know, if we said this in the pleadings, if at any time, for whatever reason, the court vacated sui sponte and reinstated that count, well, it's a different matter. But that hasn't happened. And they call you and they tender and then you cover. Of course, they do that. You defend. Yeah, that's exactly right. At the very least, you defend under a reservation of rights and under a reservation of rights. But but otherwise, underlying case goes is going to trial. And let's say at the end of the trial, a verdict is rendered and Mr. Chenin's client then is maybe in the position of appealing. And part of the appeal will be the granting of the preliminary objections. And then what happens when if if at the end of the day, all of that is reversed? What happens is that is that the way to do business? I mean, it strikes me as kind of well, otherwise, well, at the time, if it's reversed and vacated and the case is remanded, and then there's a and if there is a malicious prosecution case, then it's defended. But otherwise, they appeal. Well, that's not this. This litigant. I understand this litigants asking for the defense of this entire case. And so the converse of that is an insurance company is defending a case for which it has no obligation to indemnify. And, you know, I think, yeah, at least the union, commercial union talks about that, because it states, you know, that's essentially a conflict. I mean, there's no potential indemnification. So I would like to just briefly note that the district courts, there is a bevy of district court decisions to stand for the proposition that the duty to defend can terminate upon the dismissal of the claim and that comes from what comes from the analysis. It comes from the analysis of Kata Wilder. And what it means to confine a claim to a recovery that is not encompassed by the policy. It is true. The Pennsylvania Supreme Court has not specifically addressed the issue. It is an in this instance there when this case goes to verdict, there is no potential duty of indemnity. So you are not you are not relying on the district courts embracing the Superior Court case in Bombard. Is that right? Well, I don't know that Bombard actually said it does. In fact, it does not say Bombard. Yeah, I don't. It was a misuse of Bombard. Yeah, I didn't understand that reference to Bombard. No, but in fact, all of the district court cases that are cited in this instance, all go off on Bombard. Well, I'm not, I'd have to trace your honor. I think, you know, but I don't know that for a fact. But what I'd say though, is, is that we have to go back to the concept of confining a claim to a recovery not covered. Let's talk about that. Because what can it possibly mean? Other than the dismissal of a covered claim? It doesn't truly mean defending a case through judgment. Well, at the time of judgment, there is nothing left to defend. The case is over. And the Hawaii case. Is there not a Third Circuit case? I think it's pronounced Ramara back in 2016, that uses some fairly definitive, final sounding language. That the duty to defend goes until the case is absolutely clear that there is no longer a possibility that the insurer owes the insurer to defense. Well, Ramara didn't address this issue. Ramara is just a duty to defend case, your honor, in which the court said that the endorsement triggered a duty to defend. There was no consideration about the issue of when it terminates. And so you don't know what the language was that the court employed, but it had nothing to do with what was before the Third Circuit in Ramara. Okay. So the, the, but what I'm trying to get to is the Hawaii case. Really the concept of the Hawaii case is, oh, it's interlocutory. You know, it could always be, you know, the judge has the discretion to vacate, change its mind. That's the, that's the theory of, of it makes no sense because if it was interlocutory and it's changed and then it's reinstated, well, then the carrier will defend, but otherwise you're defending a case that you don't cover through judgment. And then what do we, what do we understand confining the claim for one not covered? You've defended until, until the file is closed and everyone just throws the file in the garbage. That's not what that language can possibly mean. That seems, that seems like an especially pernicious rule in multiple count cases, because if, if some of the counts are clearly not covered and one of the counts is arguably covered, then the insurance carrier law firm has every incentive to make sure that it defends only the arguably covered count and can roll over and play dead on the other uncovered counts. That sounds pretty crazy. No, no, I mean, no, no. I mean, if, if the, once the firm is hired to defend a multi-count complaint, their client is the insured and their duty is to the insured. No, I know, but they know where their bread is buttered and the bread is buttered by the company that's at risk on count one. And if the company's not at risk on count two or three, it's no sweat off their back if they get hit with a verdict on count two or three. The reality is, is that in a multi-count complaint covered and uncovered counts, the carrier has a duty to defend and the carrier cannot take affirmative actions to skew the case in a way that would prejudice the interests of the insured. But we're not, you know, we're not dealing with that right here. We're dealing with a uncovered count. And, you know, the question of whether a carrier is going to control the defense for a claim that they have no potential, no potential of indemnification. I, I submit that that's not what, what Cattlewater means in the context of Pennsylvania is that if a dismissed claim and it's the only covered claim, then the duty to defend terminates. The court, you know, could have sent things such as, well, the carrier must defend until there's a judgment. The carrier could say that the court could have said in Cattlewater, well, they have to defend until the covered claim is withdrawn. They didn't say that. They said until such time that the insurer can confine the claim to one not covered by the policy, meaning proving that there is no possible verdict or judgment that's encompassed by the policy. And we submit that's what happened here. We understand your argument. Thank you very much, Mr. Schallzer. Mr. Channon, you reserve two minutes for rebuttal. I'll try to be fast. There's a lot to cover. The, that our entire argument is what's wrong with the district court's decision and Westminster's argument. We have never argued only the case has to be maintained through defense is always through judgment. We have never argued there's an abstract principle that all cases have to be defended forever once there's a, a covered claim in the case. I'm just like quickly read paragraph 165, which is right in count two. And this is sprinkle, these allegations are sprinkled throughout the case. The remaining count count to defendants actions and Shapiro statements demonstrated the frivolous claims, which is defined in paragraph one of the complaint to include claims without brought without any merit among other things were procured initiated and continued for inter alia. And then it goes on the express purpose, you know, wrongful purposes. And then the next paragraph procuring initiating and continuing frivolous claims for improper purposes and by improper means. So it combines the two claims. If that claim is proven at trial, there is liability for a malicious prosecution claim, whether it's labeled Dragon, Eddie, or, or the term Westminster prefers and continues to use in spite of numerous cases saying that term is ambiguous. They continue to use it. A reasonably intelligent insured has no idea that that term, unless they go to a lawyer and a lawyer, even a lawyer would have to look it up to be sure that there's a clear distinction between malicious prosecution and abuse of process. Now, we didn't talk about ambiguity, and we don't have time for it now. But the there's no case in all the cases, again, formalism, formality, overarching principles without any look at the reality and the clear and the law. The there aren't all the cases relied on for the distinction between malicious prosecution and abuse of process by Westminster and by the trial court are not insurance cases. They are cases which delineate the distinction between those two torts. And I don't believe we've ever denied that there that under Pennsylvania law, there can't be a distinction between those two torts for general purposes, such as the statute of limitations. However, that's not an insurance case, different issue under insurance law, just like the district court didn't make an independent analysis of the continuing duty, the district court didn't analyze from this under Pennsylvania law, what the district court is supposed to analyze, which is what are the what's a reasonable interpretation of that language, not the technical language of lawyers, or jurists, but what is the reasonable person understand likely to understand from a reasonably intelligent from the perspective of the reasonably intelligent person? Is there any ambiguity? Are there two possible different interpretations of the language of the policy? And as you know, that would be interpreted against the insurance, but the only case there is one case decided under Pennsylvania law. And it's a great case. It's a thorough case. It's a beautifully written case. It's a well researched case. And that is told brothers cited in our briefs and quoted at length in the brief. And told brothers is a Delaware case. It was entirely ignored. The district court was not writing on a clean didn't have to write on a clean slate. Instead of the abstract principle that well, there's distinctions between the two torts. The the looking at it from in the, in the insurance coverage area, you make a different inquiry and told brothers makes that inquiry. And it's a thorough careful, I urge the case that case concludes. Yeah, there's distinctions and they still are distinctions in Pennsylvania law between the two torts. But, but they're blurred. And they've and from the point of view of a reasonable insured, not not a subjective interpretation, an objective interpretation, there is there is ambiguity in that tape term, and it should be construed against the insurer. So again, I urge the court to like to quote it, if I may, if I still have time. Although the distinction between the two torts is interesting in a scholarly and historical context, it doesn't seem to matter much to life in the real world. When an abusive litigant and both of these see unlike the negligence and the contract claim being separate, you have abusive litigation. That's what both torts are about. Both torts are in the case, the facts that I read about initiation continuation of a suit. That's a discovery and trial. In this case, the insured needed a defense on those claims. And Westminster had a potential obligation of there was a potential for recovery on those claims. But going on, when an abusive litigant uses the legal system to oppress others, there, there are many cases in which both torts overlap, and either will lie. That's Keaton and Prosser on torts, the quoted in the in Judge Quillen's opinion, which was adopted by the Delaware Supreme Court, for the reasons given by Judge Quillen. I mean, it's a really very fine. I've given it to people as an example of good legal writing. The damages are the same for the two. All right, Mr. Channon, I think we understand your argument. We appreciate it. We appreciate your argument, Mr. Salzer, and we'll take the matter under advisement. Can I say one word, a couple of words on that new case? Giving you 10 extra minutes already, but go, why not? Go ahead, pile on. The court was deciding, I looked at it and didn't see it as affecting this case. The court was people were going back and forth. And now, same firm that's involved in this case. And now the court said enough is enough. The court did not reach the issue of whether abuse of process is personal is not insurance. Second of all, they didn't reach the issue that it was a collateral motion for contempt that was then tossed out. And the person who got the contempt sanction brought a post-trial Dragonetti Act claim. There were abusive process claims as well, but they weren't on appeal. And the court was only holding that a post-trial Dragonetti Act claim is not a, the term was proceeding was ambiguous. Uh, and, and, um, the court held that that proceeding didn't include a post-trial motion, a post-trial Dragonetti Act claim, or a post-trial motion for sanctions and tossed out that claim. And at a footnote at the end saying, and don't take this as an invitation to bring any more claims like this. All right. Thank you. We'll take it under advisement.